IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

ROBERTO HERNANDEZ,

                Plaintiff,         Case No. 3:14 CV 250

  -vs-

                                          MEMORANDUM   OPINION
CITY OF FINDLAY, et al.l,                        AND   ORDER

                Defendant.

KATZ, J.

Plaintiff Roberto Hernandez has brought suit against the City of Findlay, Ohio; Findlay Chief of Police Greg Horne; and Findlay Police Officers Morgan Greeno, Chad McMonigal, and John Schmidt pursuant to 42 U.S.C. § 1983 for claims of excessive force and, in the case of Defendant Findlay, Ohio, failure to train and supervise.  Hernandez is also suing the individual defendants on claims of common law conspiracy and violations of Ohio law.

This case is now before the Court on Defendants' motion to strike Plaintiff's expert's report and to exclude the expert's testimony.  (Doc. No. 51).  Plaintiff responded (Doc. No. 58), and Defendant replied.  (Doc. No. 59).  For the reasons stated below, Defendants' motion is granted.

## I. Jurisdiction

The Court finds it has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367. Venue is also properly before this Court.  *See* 28 U.S.C. §1391; N.D. Ohio R. 3.8.

## II.  Facts

On February 20, 2012, Plaintiff Roberto Hernandez was pulled over by Defendant Greeno for driving a vehicle with only one working headlight.  (Doc. No. 1 at ¶ 13).  Greeno detected the scent of marijuana and learned that Hernandez had prior drug arrests.  (Doc. No. 54-4 at 3). Greeno then requested backup.  (Doc. No. 51 at 1).  Defendants McMonigal and Schmidt

responded. (Doc. No. 1 at ¶ 14). After marijuana paraphernalia was found in his vehicle, Hernandez was placed under arrest. (Doc. No. 1 at ¶ 14). Prior to being handcuffed, Hernandez informed the officers that he had a shoulder injury and asked for his hands to be handcuffed in front of his body. (Doc. No. 1 at ¶ 15). There is some disagreement as to who ultimately handcuffed Hernandez, but one of the defendant officers handcuffed Hernandez behind his back, using two pairs of handcuffs linked together to lessen the strain on Hernandez's shoulder. (Doc. No. 51 at 1). Hernandez claims the arresting officer placed the handcuffs on him too tightly and left them on for forty minutes, causing severe injuries to both of his wrists. (Doc. No. 1 at ¶ 16). Defendants claim Hernandez was only handcuffed for "a few minutes." After the handcuffs were removed, Hernandez used his cell phone to take pictures of his wrists. (Doc. No. 1 at ¶ 18). He also claims to have used his cell phone to take pictures of his wrists the following day. (Doc. No. 58 at 6).

### III. Discussion

Federal Rule of Evidence 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

The district courts serve a "gatekeeping" function by which they exclude unreliable expert testimony. *Daubert v. Merrill Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). This responsibility applies to all expert testimony, not just to "scientific testimony." *Kumho Tire Company Ltd. v.*

2

*Carmichael*, 526 U.S. 137, 141 (1999); *Johnson v. Manitowoc Boom Trucks, Inc.*, 484 F.3d 426, 429 (6th Cir. 2007). In *Kumho*, the Supreme Court stated that district courts must exercise the gatekeeping function regarding testimony in both scientific and non-scientific cases. *Kumho*, 526 U.S. at 141; *see also Berry v. City of Detroit*, 25 F.3d 1342, 1349–50 (6th Cir. 1994). District courts have the discretion to determine whether "a proposed expert's testimony is admissible, based on whether it is both relevant and reliable." *Johnson*, 484 F.3d at 429.

In *Daubert*, the Supreme Court provided a non-exclusive list of factors for a court to consider when reviewing whether proffered expert testimony is sufficiently "reliable." Such factors include: (1) "whether a theory or technique . . . can be 'and has been tested' "; (2) "whether the theory or technique has been subjected to peer review or publication"; (3) "the known or potential rate of error"; and (4) "general acceptance." *Daubert*, 509 U.S. at 593–94; *see also First Tenn. Bank Nat'l Ass'n v. Barreto*, 268 F.3d 319, 334 (6th Cir. 2001).

These factors are not definitive. The inquiry must be conducted in light of the facts of the particular case, the nature of the issues, the expert's particular expertise, and the subject matter of the proposed testimony. *Johnson*, 484 F.3d at 430. District courts have considerable latitude in determining how to test an expert's reliability, as well as in deciding whether or not the proposed testimony is relevant, and whether the expert testimony is needed to assist the court or jury. *Id*.

The Sixth Circuit has recognized that courts are to consider to what extent the proposed experts' opinions are prepared in the context of the litigation. *Johnson*, F.3d at 430, 434–35. The court stated:

> if a proposed expert is a "quintessential expert for hire," then it seems well within a trial judge's discretion to apply the *Daubert* factors with greater rigor, as the magistrate judge seems to have done in this case. Such an expert is not [to] be accorded a presumption of *unreliability*, but the party proffering the expert must show some objective proof – such as the expert's extensive familiarity with the particular type of machine in question . . . – supporting the reliability of the expert's testimony.

3

*Id*. at 435 (emphasis in original).

An expert's opinion must be supported by more than subjective belief and unsupported speculation. The opinion should "be supported by good grounds, based on what is known." *DeMerrel v. City of Cheboygan*, 206 F. App'x 418, 427 (6th Cir. 2006) (internal quotations marks and citations omitted). "[C]onclusions based only on personal opinion and experience do not suffice to establish the reliability or utility of expert testimony." *Brown v. The Raymond Corp.*. 432 F.3d 640, 648 (6th Cir. 2005) (internal quotation marks and citation omitted).

The Sixth Circuit has stated that a district court has a duty to exclude "legal opinions" offered by experts that the court deems improper. *Ross Bros. Constr. Co. v. MarkWest Hydrocarbon, Inc.*, 196 F. App'x 412, 415 (6th Cir. 2006). This duty is independent of Rule 704. *Id*. As the court explained:

> Ross Brothers [the plaintiff] admits that Boggs [the plaintiff's expert] offered opinion testimony on the ultimate issue in the case, but argues that Fed. R. Evid. 704 "permits a witness to testify in the form of an opinion or inference to an 'ultimate issue to be decided by the trier of fact.'" But Ross Brothers focuses on the wrong rule of evidence. The district court did not exclude Bogg's opinion testimony on the theory that it violated Fed. R. Evid. 704; it was excluded because the testimony contained numerous conclusions of law rather than fact. For example, Boggs proposed to testify that "MarkWest's tender of partial payment of the invoiced amount was not made in good faith, [and] did not have a good faith basis." This is not a factual conclusion within the expert's competence; it is a legal conclusion. This circuit has held that a district judge has the discretion–and the duty–to exclude "legal opinion" it deems improper, and this stands independent of Fed. R. Evid. 704.

*Id.*

Plaintiff's expert, Andrew J. Scott, III, is a former Police Patrolman, Detective, Sergeant, Lieutenant, Assistant Chief of Police, and Chief of Police. (Doc. No. 54-2 at 3–6). Scott left the police force in 2006 and has worked as a consultant for the last nine years. (Doc. Nos. 54-2 at 3 and 54 at 5). Scott testified in his deposition that the last time he handcuffed someone in the line of duty was 1998 or earlier. (Doc. No. 54 at 6).

4

Scott used as the basis for his expert opinions the photographs Hernandez claims to have taken immediately following his release from the handcuffs and the following morning, his personal experience and knowledge, and law enforcement manuals. (Doc. No. 54-1 at 5–8). Scott also performed handcuff tests on himself, having himself handcuffed once too tightly and again later according to his understanding of proper handcuffing procedure in an attempt to see which, if either, method would produce the marks Hernandez allegedly suffered as a result of his handcuffing. (Doc. No. 54 at 20). Scott did not, however, lean back against his handcuffed arms, as one might do while handcuffed and riding in a vehicle. (Doc. No. 54 at 20).

Scott prepared a report on the basis of the aforementioned and plans to testify to the two opinions he has formed. Scott's first opinion is that the arresting officer improperly applied the handcuffs to Hernandez, contrary to "generally accepted police practices and procedures, which resulted in "significant injury to both wrists. . . ." (Doc. No. 54-1 at 4). Scott bases this opinion on the photographs Hernandez supplied of his wrists, Defendants' depositions, the International Association of Chiefs of Police (IACP) Training Key #267, and Scott's personal experience. (Doc. No. 54-1 at 4–5).

Defendants ask the Court to strike this opinion, in part because Scott bases his opinion on the photographs provided by Hernandez, which are not original photographs and which are "exceedingly unclear" enlargements. (Doc. No. 51 at 7). Defendants also claim that Scott's experiment in which he had himself handcuffed did not accurately recreate Hernandez's situation. (Doc. No. 51 at 9).

Defendants are correct. In formulating his first opinion, Scott relied almost exclusively on blurry enlargements of photographs provided by Hernandez to determine that the handcuffs were inappropriately applied. While Scott did incorporate his experience and a law enforcement manual on proper procedure into the formation of his opinion, he used these sources as a means to assess and

5

explain the marks allegedly shown in the photographs. (Doc. No. 54-1 at 7–8). Scott also used the photographs to dispute Defendants' deposition testimony. (Doc. No. 54-1 at 8).

Defendants are correct, as well, that Scott did not accurately recreate Hernandez's sitting position while in the back of the police car. Hernandez stated in his deposition that he leaned over on one of his handcuffed wrists. (Doc. No. 45 at 19). Scott, in his experiment, "chose not to" lean back against his handcuffed wrists. (Doc. No. 54 at 20). Because the photographs are blurry and Scott's experiment did not accurately recreate Hernandez's position while handcuffed, the Court finds Scott's first opinion is not "the product of reliable principles and methods" as required by Federal Rule of Evidence 702(c).

Scott's second opinion is that Hernandez "was subjected to force that was not objectively reasonable." (Doc. No. 54-1 at 6). In forming this opinion, Scott considered the pictures Hernandez provided, Hernandez's deposition testimony, the IACP model policy on the use of force, his personal experience and training, and the Supreme Court case *Graham v. Connor*, 490 S. Ct. 386 (1989). (Doc. No. 54-1 at 6). Defendants object to this opinion on the basis that Scott is offering a legal conclusion. (Doc. No. 51 at 10).

Again, Defendants are correct. Not only is Scott's second opinion also largely based on blurry photographs, which this Court has found to be insufficient data, Scott's second opinion impermissibly conveys a legal conclusion. While the term "objectively reasonable" may be used in the law enforcement vernacular, Scott went too far when he defined the term in the legal context. *See Berry v. City of Detroit*, 25 F.3d 1342, 1353–54 (6th Cir. 1994). Not only did Scott cite Supreme Court authority on determining whether use of force is reasonable, Scott then conducted a legal analysis using the factors set forth by the Supreme Court and applying them to Hernandez's arrest and claimed injuries. (Doc. No. 54-1 at 6–7). In doing so, Scott formulated an opinion that will do more than provide the trier of fact with the information it needs to draw inferences with respect to the ultimate

6

issue in this case. *See Berry*, 25 F.3d at 1353; *Woods v. Lecureux*, 110 F.3d 1215, 1221 (6th Cir. 1997). Instead, Scott's opinion and proposed testimony will tell the trier of fact which result to reach. *See id.* As such, the Court finds that Scott's report and testimony will not be helpful to the jury but will, instead, impermissibly "invade[] the province of the court." *See Berry*, 25 F.3d at 1353.

### IV. Conclusion

Accordingly, Defendants' Motion to Strike Plaintiff's Expert Report and Exclude His Testimony (Doc. No. 51) is granted.

Plaintiff is granted three (3) weeks from the date of this order to file a response to Defendants' motion for summary judgment. Defendants granted two (2) weeks thereafter to file reply.

IT IS SO ORDERED.

                                               s/ *David A. Katz*
                                               DAVID A. KATZ
                                               U. S. DISTRICT JUDGE